FILED

2023 Feb-22  PM 01:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| APRIL PIPKINS, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.:  2:19-CV-1907-RDP |
| | } | |
| CITY OF HOOVER, ALABAMA, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff's Motion to Amend Order to Grant Leave to File an Immediate Appeal to the Eleventh Circuit. (Doc. # 120). Defendants have responded to Plaintiff's Motion. (Docs. # 124, 125, 126). On January 24, 2023, the court conducted a status conference and heard argument on Plaintiff's Motion and other matters.

### I.      Background

On December 16, 2022, this court granted Defendant David Alexander's Motion for Summary Judgment on the issue of qualified immunity. (Docs. # 117, 118). In granting that Motion, the court concluded (1) that Officer Alexander had committed no underlying constitutional violation, and (2) that Plaintiff had failed to show that that Officer Alexander violated any clearly established law. (Doc. # 117). Although the court has entered summary judgment on Plaintiff's claims against Officer Alexander, Plaintiff has remaining claims pending against the City of Hoover, Brookfield Properties Retail, Inc. and Hoover Mall Limited, L.L.C. Specifically, the following claims remain: a *Monell* claim pursuant to 42 U.S.C. § 1983 against the City, Brookfield and the Mall; and a Wrongful Death (Negligence and Wantonness) Claim against the City.

II.     **Applicable Law**

In the current Motion, Plaintiff requests that this court amend its Order on Officer

Alexander's Motion for Summary Judgment to provide her leave to immediately file an appeal.

(Docs. # 120, 121). One question presented is under what rule or statute the court should amend

the order. (*Id*.). However, there are at least three alternative avenues through which a court might

amend an order to allow an immediate appeal.

Federal Rule of Civil Procedure 54(b) provides, in pertinent part:

> When an action presents more than one claim for relief—whether as a claim,
> counterclaim, crossclaim, or third-party claim—or when multiple parties are
> involved, the court may direct entry of a final judgment as to one or more, but fewer
> than all, claims or parties only if the court expressly determines that there is no just
> reason for delay. Otherwise, any order or other decision, however designated, that
> adjudicates fewer than all the claims or the rights and liabilities of fewer than all
> the parties does not end the action as to any of the claims or parties and may be
> revised at any time before the entry of a judgment adjudicating all the claims and
> all the parties' rights and liabilities.

*Id*. "The Rule provides an exception to the general principle that a final judgment is proper only

after the rights and liabilities of all the parties to the action have been adjudicated." *Ebrahimi v.*

*City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

Title 28 U.S.C. § 1292(b) provides, in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable
> under this section, shall be of the opinion that such order involves a controlling
> question of law as to which there is substantial ground for difference of opinion and
> that an immediate appeal from the order may materially advance the ultimate
> termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). If the district judge certifies an order in this manner, the court of appeals has

discretion to permit an appeal. *Id.*

Finally, "[u]nder Federal Rule of Civil Procedure 56(f)(3),[] a district court may grant

summary judgment *sua sponte* "after giving [the parties] notice and a reasonable time to respond."

*Lance Toland v. Phoenix Ins. Co.*, 855 F. App'x 474, 481 (11th Cir. Mar. 30, 2021) (citing *Celotex*

2

*Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [he] had to come forward with all of h[is] evidence.")). "[W]hen 'a legal issue has been fully developed [] and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided.'" *Lance Toland*, 855 F. App'x at 481 (quoting *Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201 (11th Cir. 2003) (in turn citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999))).

## III.    Analysis

Plaintiff's Motion does not specifically request that the court exercise its authority under Rule 56(f) to grant summary judgment to the remaining defendants, but Plaintiff recognizes the court's authority to do so. (Doc. # 121 at 3). In responding to Plaintiff's Motion, Defendants argue that entering summary judgment in their favor in light of the dismissal of the underlying claims against Officer Alexander would be the most efficient course of action. (Docs. # 124 at 3, 125 at 2-3, 126 at 2).

In this case, "a [dispositive] legal issue has been fully developed [] and the evidentiary record [on that issue] is complete." *Artistic Ent., Inc.*, 331 F.3d at 1201. Plaintiff's original Complaint was filed in this action in November 2019. After the court resolved initial motion practice, the parties conducted discovery on qualified immunity issues for approximately a year. (*See, e.g.* Doc. # 106). On May 11, 2022, Officer Alexander filed his Motion for Summary Judgment. (Doc. # 97). Following the filing of that Motion, the court undertook additional steps to ensure Plaintiff had the opportunity to conduct the necessary discovery to respond to the dispositive Motion. (Doc. # 106). Under these circumstances, "summary judgment [under Rule 56(f)] is entirely appropriate *even if no formal notice has been provided*." *Lance Toland*, 855 F.

App'x at 481 (emphasis in original). But, the court has taken case to ensure all parties were given notice and an opportunity to address the Rule 56 issues in the case.

At the January 24, 2023 status conference, the court allowed Plaintiff to fully argue her Motion to Amend, including why she believed the court's decision granting summary judgment to Officer Alexander was incorrect. Following that argument, the court discussed with the parties the best way to proceed in this case given the court's ruling, which granted Defendant Alexander's Motion for Summary Judgment. The court and the parties also discussed the application of Rule 56(f) to the remaining issues in the case, particularly given that what the court views as the material facts relevant to the dispositive issues in the case are undisputed.

After discussing other procedural vehicles which would allow Eleventh Circuit review of the Alexander ruling (*e.g.*, final judgment under Rule 54(b), certification under 28 U.S.C. § 1292(b)), the court suggested that it circulate to the parties a draft opinion granting summary judgment to the other Defendants in this case and permit review and comments on the draft opinion. The draft opinion was circulated on January 24, 2023. On February 14, 2023, the parties submitted their respective comments to the court. Defendants had no suggested changes. Plaintiff submitted comments and objected to the proposed opinion.

The court has given notice and reasonable opportunity for all parties to be heard. *See* Fed.R.Civ.P. 56(f). The court also has been fully able to assess and analyze Plaintiff's arguments, but nevertheless believes this is a case in which Defendants are entitled to summary judgment. Although Plaintiff argues that it may be that other facts could be uncovered via additional discovery, which she contends may alter the court's analysis, the court disagrees. There is no reason to delay resolving the Rule 56 issues in this case.

To briefly reiterate the relevant undisputed facts, at approximately 9:51 p.m. on November 22, 2018, Officer Alexander and his partner were in uniform on the second floor of the Mall. (Doc. # 99-2 at 8; Doc. # 99-1 at ¶ 5). Officer Alexander heard two gunshots and a female's scream behind him. (Doc. # 99-1 at ¶ 5). Officer Alexander and his partner turned toward the gunshots and drew their firearms. (Doc. # 99-1 at ¶ 5; Doc. # 99-2 at 16, 18).

Officer Alexander was approximately 75 feet away from the location of the initial gunshots when he heard them. (Doc. # 99-2 at 18). He moved toward the area where he heard the gunshots and looked for immediate threats. (Doc. # 99-1 at ¶ 5). Officer Alexander observed a crowd of shoppers near Foot Action running away from where he heard the gunshots (*Id*. at ¶ 9), but he also observed two males near some railing who were not running. (*Id*. at ¶ 7, 8, 10). One of the two males was clutching his stomach and appeared to be injured. (*Id.*).

Officer Alexander also observed another male with a handgun in his right hand moving toward the two males who were stationary near the railing. (*Id*. at ¶ 8). Officer Alexander feared for the lives of the shoppers, his partner, and himself. (*Id*. at ¶ 10). Officer Alexander believed that the man moving with the gun, later identified as Bradford (Plaintiff's decedent), was about to shoot the two males near the railing. (*Id*. at ¶ 10). Officer Alexander fired his duty weapon four times, with three bullets striking Bradford and killing him. (Doc. # 99-1 at ¶ 9; Doc. # 99-2 at 22).

Officer Alexander did not provide Bradford any verbal warning before he fired. (Doc. # 114-3 at 37-38, 42, 48, 61-62). Officer Alexander did not believe it was feasible to give a warning. (Doc. # 114-3 at 38, 129-30). In Officer Alexander's estimation, Bradford was approximately 10 feet away from the two males near the railing when he fired. (Doc. # 99-1 at ¶ 10; Doc. # 99-2 at 17). The entire event, from the time Officer Alexander heard the two initial shots until he shot Bradford lasted approximately five seconds. (Doc. # 99-1 at ¶ 11; Doc. # 99-2 at 8, 13, 29).

5

"The 'law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.'" *Powell v. Snook*, 25 F.4th 912, 922 (11th Cir. 2022), *cert. denied*, 2022 WL 4652025 (U.S. Oct. 3, 2022) (quoting *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007)). Instead, an officer may use deadly force when he:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary []; and (3) has given some warning about the possible use of deadly force, *if feasible*.

*Perez v. Suszczynski*, 809 F.3d 1213, 1218-19 (11th Cir. 2016) (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013)) (emphasis added). Because the undisputed facts establish all three elements necessary to use deadly force under Eleventh Circuit precedent, the court concluded that Officer Alexander's use of that force was not a constitutional violation. The undisputed facts and decisional law also supported the determination that the use of force without a warning did not violate clearly established law. Further, the court concludes that the facts that Plaintiff asserts could be uncovered by additional discover would not be material to the dispute before the court.

Plaintiff first argues that any presumptions should have been resolved in Plaintiff's favor. However, the court did not draw any inferences. It applied Eleventh Circuit law to undisputed facts. Plaintiff next disputes the court's finding that Bradford was running. Plaintiff admits, however, that a security video shows Bradford in motion. How fast Bradford was moving is not a material issue of fact. He was undisputedly moving toward the two men who were stationary near the railing – with a gun in his hand and within seconds after shots were fired. Plaintiff further argues that a reasonable officer having received training similar to that received by Alexander would not have concluded that this was an active shooter situation, but rather should have presumed the man with the gun was a good Samaritan. Again, within five seconds after shots were fired, Alexander identified a man moving toward the apparent victims with a gun in his hand. At

that point, Alexander had grounds to believe that Bradford had fired the shots, that he posed further danger because he had a gun in his hand, and that because he was only ten feet away from the injured man, there was insufficient time to issue a warning. The law in this Circuit does not require (and did not require) Alexander to wait until Bradford raised the gun or fired it to take action to stop the suspect. *Powell*, 25 F.4th at 922. Although the circumstances of this case are tragic and the court appreciates Plaintiff's counsel's arguments for his client, Alexander did not violate the Constitution when he shot Bradford.

Following the court's decision on Alexander's Motion for Summary Judgment, there remain two claims in this case: a *Monell*/municipal liability claim against the City, the Mall, and Brookfield, and a wrongful death/negligence/wantonness claim against the City. However, the *Monell* claim is foreclosed by the court's Rule 56 finding in favor of Alexander that there was no underlying constitutional violation. "'There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.'" *Jacobs v. Ford*, 2022 WL 1123384, at *4 (11th Cir. Apr. 15, 2022) (quoting *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017)). The court therefore finds that the remaining defendants are entitled to summary judgment on Plaintiff's *Monell* claim.

The only remaining claim is Plaintiff's state law wrongful death claim against the City.[1] It is well settled in this circuit that "state courts, not federal courts, should be the final arbiters of state law." *Ingram v. School Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). Indeed, where a court has granted summary judgment on all federal claims, "there is a very strong

---

[1] The court previously dismissed Count Five, which asserted a Negligence and Wantonness Claim pursuant to Alabama state law against Brookfield and the Mall; and Count Six, which asserted a Negligent and Wanton Hiring, Training, Supervision and Entrustment claim pursuant to Alabama state law against Brookfield and the Mall. (Doc. # 59 at 4, 13).

argument for dismissal [of state claims], especially where the federal claims are dismissed prior to trial." *Id.* (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "In fact, 'if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims.'" *Id.* at 108-09 (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)). Here, because Defendants are entitled to summary judgment on Plaintiff's federal claims, and because Plaintiff has not alleged any independent basis for jurisdiction over her state law wrongful death claim, the court declines to exercise jurisdiction over that claim.

## IV.     Conclusion

For all of the foregoing reasons, and after circulating this opinion to all counsel for review and an opportunity to respond before entering it, pursuant to Rule 56(f)(3), Defendants City of Hoover, Brookfield Properties Retail, Inc. and Hoover Mall Limited, L.L.C. are entitled to summary judgment on Plaintiff's remaining *Monell*/municipal liability claim against them. The court declines to exercise jurisdiction over Plaintiff's state law wrongful death/negligence/wantonness claim against the City.

A separate order will be entered.

**DONE** and **ORDERED** this February 22, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

8